UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA F.,

                Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C25-5731-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ misevaluated the medical opinion evidence and his symptom testimony. Dkt. 20 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 39 years old, has a college education, and has no past relevant work. Tr. 29, 35-36. He applied for benefits in August 2023, alleging disability as of May 3, 2015. Tr. 21. His applications were denied initially and on reconsideration. *Id.* The ALJ conducted a hearing on January 22, 2025, and issued a decision finding Plaintiff not disabled. Tr. 21-37. As

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 1

the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-3.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ found:

**Step one:**  Plaintiff engaged in substantial gainful activity between July 2017 and December 2018.

**Step two:**  Plaintiff had the following severe impairments: osteoarthritis; bilateral feet degenerative joint disease; status wrist fracture and ORIF surgery; schizophrenia; depressive disorder; anxiety disorder; trauma disorder; and knee degenerative joint disease.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b) except the individual can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. The individual can occasionally push/pull with the right, dominant, upper extremity. The individual can frequently kneel, and occasionally crouch and crawl. The individual can frequently, but not constantly, handle and finger with the right, dominant, upper extremity. The individual can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The individual can tolerate occasional, superficial interaction with the general public.

**Step four:**  Plaintiff had no past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

Tr. 23-25, 35-36.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 2

*Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of harmless error. *Id.* at 1111. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold that of the Commissioner. *Id.*

Plaintiff contends the ALJ failed to properly evaluate the medical evidence and his symptom testimony. Dkt. 20 at 1.

**A.    Medical Opinion Evidence**

Plaintiff argues the ALJ misevaluated the opinion of Lawrence Maher, NP. Dkt. 20 at 1. When considering the persuasiveness of medical opinions, the ALJ must explain how he considered the factors of supportability and consistency but need not explain how he considered other factors. 20 C.F.R. § 404.1520c(b). An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi,* 32 F.4th 785, 792 (9th Cir. 2022). Conclusions alone are insufficient – "an ALJ can satisfy the "substantial evidence" standard requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."" *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)).

Lawrence F. Maher, a compensation and pension nurse practitioner for the Veteran's Administration (VA), examined Plaintiff on May 28, 2019, and completed two VA Disability Benefits Questionnaires for foot conditions and wrist conditions. Tr. 1653-61, 1669-77. NP Maher opined Plaintiff was limited to standing for less than two hours, ambulating less than half a mile, and no cannot perform impact activity due to foot pain. Tr. 1661. The NP also found

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

Plaintiff was limited to lifting and carrying less than ten pounds on a non-repetitive basis with the right wrist due to pain. Tr. 1677. The ALJ found NP Maher's opinion unpersuasive for several reasons. Tr. 34.

### 1.      Treatment Relationship

The ALJ noted Nurse Maher examined Plaintiff for his compensation and pension exam and was not a treating source. Tr. 34. Plaintiff argues this was an invalid reason because Nurse Maher was an acceptable medical source, and his opinion was entitled to the same weight as any physician. Dkt. 20 at 7. He also argues the ALJ cannot consider the purpose of an examination or who paid for it. Dkt. 23 at 2.

The ALJ may not reject a medical opinion based on the purpose for which it was obtained. *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995). And while the ALJ may consider the length and nature of a treatment relationship in evaluating a medical opinion, the ALJ may not discredit a medical opinion solely because the provider was not a treating source. 20 C.F.R. § 404.1520c(c)(3)(i)-(v) (relationship factors include length, purpose, and extent of treatment relationship, frequency of examinations, and whether the source has examined the claimant); *Woods,* 32 F.4th at 791 (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5844) ("there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa."). The ALJ's reasoning on this point is also inconsistent with his finding the opinions from the state agency psychological consultants, both non-examining medical sources, were persuasive. Tr. 33.

The Court rejects the Commissioner's analogizing of this case to *Smartt v. Kijakazi,* 53 F.4th 489, 495 (9th Cir. 2022), in which the Ninth Circuit affirmed the ALJ's discounting of an opinion where the medical source was only consulted to complete disability paperwork, was not

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 4

providing treatment, and had no longitudinal perspective on Smartt's impairments. Dkt. 22 at 10. In *Smartt,* the rules requiring deference to the opinion of treating physicians were in effect. 53 F.4th at 495. Thus, whether the medical source was a treating physician, or an examining physician was relevant to determine which standard of review applied. These regulations are not applicable here.

### 2.    Supportability

The supportability factor focuses on evidence intrinsic to the medical opinion, requiring the adjudicator to look at the objective medical evidence and explanations provided by a medical source as support for their opinion. 20 C.F.R. § 404.1520c(c)(1).

### 3.    Plaintiff's Statements

The ALJ found NP Maher's ambulation limitations were based on Plaintiff's self-report to the provider rather than objective findings on exam. Tr. 34. Plaintiff argues these limitations were established by NP Maher's clinical findings. Dkt. 20 at 7. An ALJ may reject a medical opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). However, where the medical source supports his ultimate opinion with his own observations, the ALJ cannot reject the opinion by questioning the credibility of the claimant's complaints. *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

While NP Maher's opinion contains no observation or evaluation of Plaintiff's gait or ability to ambulate, his clinical observations of pain and other abnormalities ultimately support his findings. Nurse Maher found Plaintiff had pain with use and manipulation of both feet and characteristic calluses on the left foot. Tr. 1655. Plaintiff also had extreme tenderness of plantar surfaces on both feet, and bilateral decreased longitudinal arch height. Tr. 1655-56. NP Maher

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 5

also noted bilateral metatarsalgia and degenerative changes. Tr. 1656. These observations, which the ALJ did not address, appear to support NP Maher's opined limitations, and nothing suggests NP Maher based his opinion primarily on Plaintiff's complaints as opposed to his clinical findings. Accordingly, the ALJ erred in rejecting Nurse Maher's opinion on this basis. *Ryan,* 528 F.3d 1199-1200.

### a. Longitudinal Record

The ALJ found NP Maher's opinion unpersuasive, in part, because he lacked the opportunity to review the longitudinal record to form a more comprehensive opinion. Tr. 34. Plaintiff contends Nurse Maher reviewed all of the VA medical records and there was no record evidence in proximity to the May 2019 exam contradicting NP Maher's opinion.[3] Dkt. 20 at 8. Indeed, NP Maher reported having reviewed Plaintiff's VA e-folder as well as the VA's computerized patient record system (CPRS) for the relevant period. Tr. 1653. Failure to review the longitudinal record would only matter if the record contradicted or would have affected the physician's opinion. *Nathaniel W. v. Comm'r of Soc. Sec.*, 2022 WL 1711586, at *1 (W.D. Wash. May 27, 2022). The ALJ failed to cite any evidence from the record not reviewed by Nurse Maher to contradict his opinion. Accordingly, this was not a valid reason to reject Nurse Maher's opinion.

In sum, the ALJ's supportability findings are not supported by substantial evidence. The However, under *Woods,* a finding Nurse Maher's opinion is inconsistent with the longitudinal record, if supported by substantial evidence, is a sufficient basis for the ALJ to reject NP

---

[3] Plaintiff's statement is not entirely accurate. The record indicates Plaintiff visited his podiatrist for the first time since 2016 on May 14, 2019, just two weeks before his visit with NP Maher. Tr. 1364-65. His right foot was also examined in April 2019. Tr. 1147. The ALJ failed to contrast these records with NP Maher's opinion, however, and the Court will not do so for him. *Garrison*, 759 F.3d at 1009 (the court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 6

Maher's opinion. *See Woods,* 32 F.4th at 792-94. The Court thus examines the ALJ's consistency findings.

### 3.    Consistency

The ALJ also rejected NP's Maher's opinion as inconsistent with the medical evidence. The consistency factor evaluates the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(2).

#### a.    Limitations Related to Right Wrist

The ALJ found NP Maher's examination finding Plaintiff had zero strength in the right wrist is inconsistent with other strength tests of record and the lack of any muscle atrophy. Tr. 34 (citing Tr. 1560). Plaintiff does not challenge this finding. *Nadon v. Bisignano,* 145 F.4th 1133, 1138 (9th Cir. 2025) (deciding claimant forfeited an argument by not challenging the ALJ's findings in that regard).

#### b.    Conservative Treatment

The ALJ also discounted NP Maher's opinions as "not consistent with the minimal and conservative treatment Plaintiff was undergoing at the time." Tr. 34. This is insufficient because an ALJ must do more than offer a conclusion. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). The Commissioner defends the ALJ's statement by offering his interpretation of how the record showed Plaintiff declined foot injections and orthotics before 2020 and how NP Maher was unaware Plaintiff required surgery after the NP's examination. The Court rejects the Commissioner's proffer as the ALJ did not mention the foot injections and orthotics and thus the Court has no basis to determination what weight the ALJ might have given to these factors. Additionally, the fact Plaintiff required surgery after the NP's examination supports the NP's

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 7

findings and is not treatment that is inconsistent. The Commissioner's claim the NP wasn't aware of the surgery which followed examination is irrelevant. The consistency analysis examines whether there is relevant evidence that supports or undercuts a medical source opinion. Plaintiff's surgery is relevant and supports NP Maher's opinion.

Evidence of conservative treatment controlling symptoms can support rejecting a medical opinion. *Hanes v. Colvin,* 651 F. App'x 703, 705 (9th Cir. 2016). However, conservative treatment did not control Plaintiff's symptoms such that he later required surgery tends to undermine the ALJ's findings. *Orlando B. v. Comm'r of Soc. Sec.,* 2021 WL 12176496, at *3 (W.D. Wash. Feb. 11, 2021) ("it does not stand to reason to reject a medical opinion on this basis where conservative treatment did not control the symptoms."). Here, Plaintiff continued to report foot pain despite use of custom orthotics and diclofenac. *See, e.g.*, Tr. 1350, 1354-55, 1358. While Plaintiff had not yet undergone foot surgery at the time of Nurse Maher's opinion, conservative treatment was not controlling his symptoms at that time. And the ALJ did not find that Plaintiff failed to follow through on recommendations for more aggressive treatment. The ALJ's findings are not supported by substantial evidence.

### b.  Work Activity

Finally, the ALJ found Nurse Maher's opinion was inconsistent with Plaintiff's work activity a year earlier in which he lifted up to fifty pounds and working as a sales associate on his feet for many hours per day. Tr. 34. Plaintiff argues his prior work does not contradict NP Maher's opinion because he is not claiming he was disabled before 2019. *See* Reply Dkt. 23 ("Plaintiff does not challenge any time period before January 1, 2019.").

The ALJ specifically rejected NP Maher's opinions as inconsistent with "claimant's substantial gainful activity a year earlier." TR. 34. While Plaintiff had work activity in 2019, it

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 8

was not substantial work activity. *See* Tr. 23 (The ALJ found substantial gainful activity ends in 2018). The Commissioner argues the ALJ may properly reject an opinion based upon "any work done by a claimant." But the ALJ did not reject NP Maher's opinion upon any and all work done by Plaintiff. Rather, the ALJ specifically stated he was discounting the opinion based upon "substantial gainful activity a year earlier lifting up to fifty pounds." Tr. 34. Thus, the Court cannot rely upon a ground that deviates from the ALJ's actual rationale, as the Commissioner suggests and finds the ALJ's reliance upon Plaintiff's substantial gainful activity during a period in which Plaintiff indicates he was not disabled is erroneous.

**B**.      **Plaintiff's Testimony**

The ALJ found Plaintiff's impairments could reasonably be expected to cause his symptoms and did not find malingering. The ALJ was thus required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Vertigan v. Halter,* 260 F.3d 1044, 10149 (9th Cir. 2001). "General findings are insufficient; rather, an ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834. In other words, an ALJ's finding that a claimant's testimony is not credible must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015).

Plaintiff testified he could walk for five minutes at one time and stand for ten to fifteen minutes at a time, Tr. 74; he stands almost exclusively on his left leg to alleviate pain in his right foot and knee, *id.*; his right wrist was completely fused, and he has trouble gripping and lifting items with this hand, which is his dominant hand, Tr. 73; signing his name causes him discomfort, and he can squeeze toothpaste from the tube with his right hand but cannot squeeze

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9

shampoo from a bottle. Tr. 74. Plaintiff testified he also has cervical stenosis, which causes numbness and tingling in his left hand and a lot of pain in his neck. Tr. 73. He stated he spends a lot of time with his head slumped down, chin on his chest, because it relieves some pain and is easier than trying to hold up his head. *Id.* He does not need to lie down during the day but needs to sit with his neck resting against something. Tr. 74. He estimated he spends 75-80% of his day reclining. *Id.* If he stays off his feet and doesn't do anything with his right hand, he suffers only mid-level pain. Tr. 75. Activities such as driving aggravate his pain. *Id.*

In his function report, Plaintiff stated anything involving use of his right hand is painful, and he struggles with bathing and dressing himself because he has trouble balancing on his right foot. Tr. 289. He only eats frozen meals because he can't stand in front of his stove to cook because of his foot condition. Tr. 294. He can do some light cleaning, using his left hand exclusively, but only cleans two to three times per month for less than an hour each time. *Id.* His family helps with chores and caring for his dog. Tr. 289, 294. Plaintiff stated his conditions affect his ability to lift, squat, stand, walk, kneel, climb stairs, and use his hands. Tr. 297.

The ALJ rejected Plaintiff's testimony as inconsistent with his daily activities, the objective medical evidence, and Plaintiff's minimal and conservative treatment. Tr. 29-31. Plaintiff argues that the ALJ failed to explain how his activities were inconsistent with his professed limitations. Dkt. 20 at 9-10 (quoting *Laborin v. Berryhill,* 867 F.3d 1151, 1155 (9th Cir. 2017)). He contends his testimony is "fully supported medically," given Nurse Maher's findings and the absence of any contrary medical evidence. *Id.*

### 1.    Activities of Daily Living

An ALJ may reject a claimant's symptom testimony as inconsistent with the claimant's daily activities. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 10

especially cautious in concluding daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison,* 759 F.3d at 1016. Thus, the Ninth Circuit holds the level of activity must be inconsistent with the claimed limitations to have any bearing on the claimant's credibility. *Reddick,* 167 F.3d at 722.

Here, there is no "reasonable inference that such an inconsistency exists." *Ferguson v. O'Malley,* 95 F.4th 1194, 1203 (9th Cir. 2024). The ALJ found Plaintiff's activities such as completing a degree in business management, listening to music, enjoying photography, driving his children to events, grocery shopping, and preparing simple meals undermined his testimony. Tr. 29. None of these activities involved prolonged standing, walking, gripping, or lifting that would contradict Plaintiff's testimony regarding his physical impairments. And while he testified that driving aggravates his pain, he did not report he could not drive. Tr. 75.

Daily activities may also be grounds for discounting testimony if a claimant is able to spend a substantial part of his day performing physical functions that are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). There is no indication here that the activities Plaintiff engaged in either comprised a substantial part of his day or were transferable to a work environment. *Diedrich v. Berryhill,* 874 F.3d 634, 643 (9th Cir. 2017) (activities such as cooking simple meals, house chores, caring for a pet, and occasional shopping are not similar to typical work responsibilities). Therefore, this was not a clear and convincing reason for rejecting Plaintiff's testimony.

### 1.    Objective Medical Evidence

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 11

The ALJ found the objective medical evidence was not consistent with the degree of limitation alleged. Tr. 29. When objective medical evidence is inconsistent with the claimant's testimony, the ALJ may weigh it as undercutting such testimony. *Smartt,* 53 F.4th at 498. However, the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborating" every allegation within the subjective testimony." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005).

In reviewing the medical record, the ALJ discussed findings and treatment received before 2019, the date Plaintiff now claims as an onset date. As to the ALJ's review of records starting in 2019, the ALJ noted Plaintiff followed up and obtained orthotics; he had foot pain on palpitation but no weakness; he underwent surgery; and he reported good pain control in 2020. Tr. 30. The ALJ concluded the evidence shows Plaintiff "continued with some complaints of bilateral foot pain and treatment; 2023 imagining shows mild foot osteoporosis but severe degenerative changes to the "postoperative fused right first [sic]." *Id.* The ALJ also noted the record showed Plaintiff had chronic knee pain in 2024; MRI imagining showed some tears; and engaged in some physical treatment and Plaintiff was advised to lose weight. Tr. 30-3. Plaintiff also sought care for chronic left hand and finger pain in 2024.

The ALJ concluded from the alleged onset date of 2015, most of Plaintiff's treatment was minimal and conservative and thus the overall evidence supports the ALJ's RFC determination. This conclusion focuses upon the medical record that Plaintiff submits predates his disability onset date of 2019. This is understandable because the record does not indicate Plaintiff clearly informed the ALJ of the intent to amend his onset date from 2015 to 2019. The question before the Court is because Plaintiff claims he became disabled from 2019 onward whether the case

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12

should be remanded for further proceedings. The Court concludes it should. A claimant's medical condition and consequent symptoms are often not stable, especially in a case such this in which the ALJ found Plaintiff has osteoarthritis, bilateral feet joint disease, wrist fracture post-surgery. Here, the ALJ noted Plaintiff's medical treatment was minimal before 2019. However, starting in 2019, Plaintiff received much more treatment including surgery and imaging findings indicating post-surgery severe degenerative changes were found. The medical record during Plaintiff's claimed onset of disability period does not reasonably show just minimal treatment and does contain some objective findings that support Plaintiff's testimony.

The Court accordingly concludes with the amended onset date, the ALJ must reevaluate Plaintiff's testimony.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reassess NP Maher's opinion and Plaintiff's testimony, develop the record and redetermine RFC as needed and proceed to the remaining steps of the sequential disability evaluation process as appropriate.

DATED this 25th day of February, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 13